## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

### COURT FILE NO.:

Mickey Thrasher and Kimberly Cyr
*on behalf of themselves and all others*
*similarly situated*
      Plaintiffs

v.

Rocky Mountain Auto Brokers, Inc.,
      Defendant

_____

### CLASS ACTION COMPLAINT AND JURY DEMAND
_____

### NATURE OF ACTION

1.      Plaintiffs, Mickey Thrasher and Kimberly Cyr (collectively "Plaintiffs"), bring this putative class action complaint against Defendant, Rocky Mountain Auto Brokers, Inc. ("RMAB"), under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, and Regulation E, 12 C.F.R. part 205, individually and on behalf of all others similarly situated.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1693m(g) and 28 U.S.C. § 1331.

3.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), as the acts and transactions giving rise to Plaintiffs' action occurred in this district and Defendant transacts business in this district.

## THE ELECTRONIC FUND TRANSFER ACT

4.      The EFTA is a federal statute that regulates electronic fund transfers—in particular, preauthorized transfers—initiated by consumers through financial institutions.

5.      Congress passed the EFTA "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b).

6.      Courts have observed that it was "[t]he dependency of electronic fund transfer systems on computers and the resulting absence of any human contact with the transfer [that] motivated Congress to pass the EFTA, as well as the lack of a written record." *Vigneri v. U.S. Bank Nat'l Ass'n.*, 437 F. Supp. 2d 1063, 1066 (D. Neb. 2006).

7.      In passing the EFTA, however, Congress noted that "[t]he primary objective of [the EFTA] . . . is the provision of individual consumer rights." 15 U.S.C. § 1693(b).

8.      "One objective of the EFTA is to 'insure that consumers are not forced to use [electronic fund transfers].'" *Kemply v. Cashcall, Inc.*, No. 08-CV-03174-MEJ, 2016 WL 1055251, at *6 (quoting 124 Cong. Rec. 25,733, RJN, Dkt. No. 289-4 at 3).

9.      To accomplish this goal, Congress enacted § 1693k which provides: "No person may— (1) Condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers." 15 U.S.C. § 1693k. "With this provision, Congress sought to protect consumers' ability to choose their payment method by prohibiting persons from conditioning the extension of credit on EFT payments." *Kemply*, 2016 WL 1055251, at *6; *see also* 124 Cong. Rec. 25,735 ("As with

any technology, many consumers will choose not to change but to cling to their traditional method of payment. [Section 1693k(1) is] designed to insure that consumers have this right.").

## PARTIES

10.    Plaintiff, Mickey Thrasher, is a natural person who at all relevant times resided in the State of Colorado, County of El Paso, and City of Colorado Springs.

11.    Mr. Thrasher is a "consumer" as defined by 15 U.S.C. § 1693a(6) and 12 C.F.R. § 205.2(e).

12.    Plaintiff, Kimberly Cyr, is a natural person who at all relevant times resided in the State of Colorado, County of El Paso, and City of Colorado Springs.

13.    Ms. Cyr is a "consumer" as defined by 15 U.S.C. § 1693a(6), 12 C.F.R. § 205.2(e).

14.    Defendant, RMAB, is a company that is, upon information and belief, duly licensed to conduct business within the state of Colorado, and with a principal office located at 4912 Carrera Point, Colorado Springs, CO 80923.

## MS. CYR'S TRANSACTION WITH RMAB

15.    On September 15, 2017, Ms. Cyr visited RMAB's dealership to shop for a vehicle.

16.    Ms. Cyr selected a 2007 Saturn Aura, and agreed to purchase it from RMAB for $11,291.38.

17.     Ms. Cyr could not afford to pay cash for the vehicle, so she purchased it on credit and executed a retail installment sales contract ("the Cyr Contract") in favor of RMAB.

18.     A true and accurate copy of the Cyr Contract is attached to this complaint as Exhibit A.

19.     During the parties' discussions regarding the purchase of the vehicle, RMAB's representative advised Ms. Cyr that she would have to enroll in an automatic payment plan ("the auto pay arrangement") for her loan to be approved.

20.     Based on RMAB's representations, Ms. Cyr agreed to enroll in the auto pay arrangement, and executed an electronic fund transfer authorization form

21.     A true and accurate copy of the electronic fund transfer authorization is attached hereto as Exhibit B.

22.     The electronic fund transfer authorization form authorized RMAB's assignee to transfer money from Ms. Cyr's bank account to pay her monthly payments under the Cyr Contract.

23.     Ms. Cyr's bank account was established primarily for personal, family, and household purposes and thus is an "account" as defined by 15 U.S.C. § 1693a(2) and 12 C.F.R. § 205.2(b)(1).

24.     The fund transfers allowed by the EFT Authorization are "electronic fund transfers" as defined by 15 U.S.C. § 1693a(7) and 12 C.F.R. § 205.3(b).

25.     The fund transfers allowed by EFT Authorization were to occur at a substantially regular intervals and thus are "preauthorized electronic fund transfers" as defined by 15 U.S.C. § 1693a(10) and 12 C.F.R. § 205.2(k).

## MR. THRASHER'S TRANSACTION WITH RMAB

26.     On December 27, 2017, Mr. Thrasher visited RMAB's dealership to shop for a vehicle.

27.     Mr. Thrasher selected a 2003 Chrysler Town & Country, and agreed to purchase it from RMAB for $7,366.91.

28.     Mr. Thrasher could not afford to pay cash for the vehicle, so he purchased it on credit and executed a retail installment sales contract ("the Thrasher Contract") in favor of RMAB.

29.     A true and accurate copy of the Thrasher Contract is attached to this complaint as Exhibit C.

30.     During the parties' discussions regarding the purchase of the vehicle, RMAB's representative advised Mr. Thrasher that he would have to enroll in an automatic payment plan ("the auto pay arrangement") for his loan to be approved.

31.     Based on RMAB's representations, Mr. Thrasher agreed to enroll in the auto pay arrangement, and executed an electronic fund transfer authorization form.

32.     A true and accurate copy of the transfer authorization form is attached to this complaint as Exhibit D.

33.     The electronic fund transfer authorization form authorized RMAB's assignee to transfer money from Mr. Thrasher's bank account to pay his monthly payments under the Thrasher Contract.

34.     Mr. Thrasher's bank account was established primarily for personal, family, and household purposes and thus it is an "account" as defined by 15 U.S.C. § 1693a(2) and 12 C.F.R. § 205.2(b)(1).

35.     The fund transfers allowed by the auto pay arrangement are "electronic fund transfers" as defined by 15 U.S.C. § 1693a(7) and 12 C.F.R. § 205.3(b).

36.     The fund transfers allowed by the auto pay arrangement were to occur at a substantially regular intervals and thus are "preauthorized electronic fund transfers" as defined by 15 U.S.C. § 1693a(10) and 12 C.F.R. § 205.2(k).

## CLASS ACTION ALLEGATIONS

37.     Plaintiffs repeat and re-allege all factual allegations above.

38.     Upon information and belief, RMAB's practice of conditioning credit upon its customers' repayment via preauthorized electronic fund transfers, is its standard practice in dealing with consumers.

39.     Upon information and belief, RMAB has engaged in its practice of conditioning credit upon its customers' repayment via preauthorized electronic fund transfers, with respect to over forty (40) individuals in the state of Colorado in the year prior to the filing of this matter.

40.     Plaintiffs brings this action on behalf of themselves and all others similarly situated.  Specifically, Plaintiffs seek to represent a class of individuals defined as:

All persons that purchased a vehicle from RMAB on credit and agreed to allow RMAB or its assignee to initiate preauthorized electronic fund transfers from their bank accounts for the payments due under their loans, within the twelve months preceding the filing of Plaintiffs' class action complaint.

41.     The proposed class specifically excludes the United States of America, the State of Colorado, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Tenth Circuit, and the Justices of the United States Supreme Court, all officers and agents of RMAB, and all persons related to within the third degree of consanguinity or affection to any of the foregoing persons.

42.     The class is averred to be so numerous that joinder of members is impracticable.

43.     The exact number of class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery.

44.     The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by RMAB.

45.     There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented. These common questions of law and fact predominate over questions that may affect individual class members. Such issues include, but are not limited to: (a) the existence of RMAB's identical conduct particular to the matters at issue; (b) RMAB's violation of the EFTA; (c) the availability of statutory penalties; and (d) attorney's fees and costs.

46. Plaintiffs' claims are typical of the claims of the class they seek to represent.

47. Plaintiffs' claims and the class's claims originate from the same conduct, practice, and procedure on the part of RMAB. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts.

48. Plaintiffs possesses the same interests and have suffered the same injuries as each class member. Plaintiffs assert identical claims and seek identical relief on behalf of the unnamed class members.

49. Plaintiffs will fairly and adequately protect the interests of the class and have no interest adverse to or which directly and irrevocably conflict with the interests of other class members.

50. Plaintiffs are willing and prepared to serve this Court and the proposed class.

51. The interests of Plaintiffs are co-extensive with and not antagonistic to those of the absent class members.

52. Plaintiffs have retained the services of counsel who are experienced in consumer protection claims, as well as complex class action litigation, will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiffs and all absent class members.

53. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) and 23(b)(1)(B). The prosecution of separate actions by individual members of the class

would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

54.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards of conduct and varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow the existence of inconsistent and incompatible rights within the class.

55.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that RMAB has acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

56.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) in that the questions of law and fact that are common to members of the class predominate over any questions affecting only individual members.

57.     Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint in that: (a) individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake; (b) as a result, very little litigation has been commenced over the controversies alleged in this Complaint and individual members are unlikely to have an interest in prosecuting and controlling

separate individual actions; and (c) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1693k

58.     Plaintiffs repeat and re-allege each and every factual allegation above.

59.     The EFTA provides:  "No person may— (1) Condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers." 15 U.S.C. § 1693k.

60.     Regulation E as promulgated by the Consumer Financial Protection Bureau provides:  "No financial institution or other person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers . . . ." 12 C.F.R. § 1005.10(e).

61.     RMAB violated 15 U.S.C. § 1693k and 12 C.F.R. § 1005.10(e) by conditioning the extension of credit to Plaintiffs and the class members upon their repayment by preauthorized electronic fund transfers.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a)  Determining that this action is a proper class action, certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules of Civil Procedure, and designating this Complaint the operable complaint for class purposes;

b)  Adjudging that RMAB violated 15 U.S.C. § 1693k and Regulation E;

c)  Enjoining RMAB from further violations of 15 U.S.C. § 1693k and Regulation E;

d) Awarding Plaintiffs statutory damages, pursuant to 15 U.S.C. § 1693m(a)(2)(A);

e) Awarding Plaintiffs, and the class they seek to represent, statutory damages in such amount as the court may allow, without regard to a minimum individual recovery, and not to exceed the lesser of $500,000 or 1 percent of the net worth of the RMAB, pursuant to 15 U.S.C. § 1693m(a)(2)(B);

f) Awarding Plaintiffs, and the class they seek to represent, reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1693m(a)(3); and

g) Awarding other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

23.    Plaintiffs are entitled to and hereby demand a trial by jury.


Dated: September 13, 2018

Respectfully submitted,

s/ Russell S. Thompson, IV
Russell S. Thompson, IV
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
602-388-8898
866-317-2674 facsimile
rthompson@ThompsonConsumerLaw.com

s/ Jose F. Gill
Jose F. Gill
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (602) 388-8836

11

Facsimile: (866) 317-2674
jgill@ThompsonConsumerLaw.com

Attorneys for Plaintiffs