IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-02342-PAB-KMT

MICKEY THRASHER and
KIMBERLY CYR, on behalf of
themselves and all others similarly situated,

    Plaintiffs,

v.

ROCKY MOUNTAIN AUTO BROKERS, INC.,

    Defendant.

---

# ORDER

---

This matter is before the Court on Defendant's Motion to Set Aside Entry of Default and to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 15] filed on November 2, 2018. Plaintiffs' Response to Defendant's Motion to Set Aside Clerk's Entry of Default and to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 16] was filed on November 21, 2018. On December 6, 2018, defendant filed Defendant's Reply in Support of Motion to Set Aside Entry of Default and to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 19].

**I. BACKGROUND**

On September 13, 2018, plaintiffs filed a class action complaint asserting one claim under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693. Docket No. 1 at 1, ¶ 1. Plaintiffs allege that, on separate dates in 2017, they purchased vehicles on credit from defendant's automobile dealership. *Id.* at 3-4, ¶¶ 16-17; *id.* at 5, ¶¶ 27-28.

Plaintiffs claim that defendant conditioned the extension of credit on plaintiffs' consent to automatic electronic fund transfer ("EFT") payments, which violated the EFTA. *Id.* at 4, ¶ 19; at 5, ¶ 30; at 10, ¶ 61.

The affidavit of service states that Rocky Rodriguez was served with the complaint and summons on September 27, 2018. Docket No. 5 at 2. The affidavit lists Rodriguez as the owner of defendant. *Id.* Defendant did not file an answer by the applicable deadline. On October 26, 2018, plaintiffs moved for a clerk's entry of default under Rule 55. Docket No. 6. The clerk entered default on October 29, 2018. Docket No. 7.

Defendant received a copy of plaintiffs' motion for entry of default on October 31, 2018 [Docket No. 15 at 3, ¶ 10] and filed this motion on November 2, 2018. Docket No. 15.

## II. DEFAULT

The Court may set aside an entry of default for good cause. *See* Fed. R. Civ. P. 55(c). "The preferred disposition of any case is upon its merits and not by default judgment." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970); *see also Katzson Bros., Inc. v. E.P.A.*, 839 F.2d 1396, 1399 (10th Cir. 1988) (noting that "default judgments are not favored by courts"). It is, however, within the Court's discretion to balance the judicial preference against default judgments with "considerations of social goals, justice and expediency." *Gomes*, 420 F.2d at 1366.

Failure to effectuate proper service, thus preventing the exercise of personal jurisdiction over a party, constitutes good cause to set aside an entry of default. *See*

*Two Moms and a Toy, LLC v. Int'l Playthings, LLC*, No. 10-cv-02271-PAB-BNB, 2012 WL 4355555 (D. Colo. Sept. 24, 2012) (setting aside entry of default for failure to effectuate service); *see also Kriston v. Peroulis*, No. 09-cv-00909-MSK-MEH, 2010 WL 11553397, at *2 (D. Colo. Oct. 28, 2010) ("[P]rocedural deficiencies such as inadequate service, lack of subject matter jurisdiction, or lack of personal jurisdiction constitute good cause allowing an entry of default to be set aside."); *see also Insituform Techs., Inc. v. AMerik Supplies, Inc.*, 588 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008) ("Where service of process is insufficient, the entry of default is void and must be set aside.").

Under Rule 4(h), a corporate defendant must be served either "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(h)(1)(B), or by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(h)(1)(A); Fed. R. Civ. P. 4(e)(1). Colorado law provides that a corporate defendant may be served by delivering a copy of the summons to the corporation's registered agent or that agent's secretary or, if no such person can be found in the state, service may be made upon "any person serving as a shareholder, member, partner, or other person having an ownership or similar interest in, or any director, agent, or principal employee of such entity, who can be found in this state." C.R.C.P. 4(e)(4)(G). The plaintiff has the burden of establishing the validity of the service of process. *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).

Plaintiffs' affidavit of service indicated that service was effected upon "Rocky

3

Rodriguez as owner." Docket No. 5 at 2. Defendant argues Rodriguez is not the owner of the corporation and, even if he was, this does not render him capable of accepting service for the company under federal or state procedural rules. Docket No. 15 at 7. Plaintiffs contend that defendant held out Rodriguez as having authority to act for the business because its website listed Rodriguez as the company's "General Manager." Docket No. 16-4 at 2. Further, plaintiffs point to Rodriguez's Facebook profile, where Rodriguez states he is the general manager of the defendant corporation. Docket No. 16-6 at 2. They argue that defendant held out Rodriguez as its general manager and, in doing so, it "clothed [him] in apparent authority to accept service" for defendant, making service proper. Docket No. 16 at 7.

"Whether apparent authority can suffice to show authorization to accept service under Rule 4 is an unsettled question." *Chatman v. Condell Med. Center*, 2002 WL 737051, at *3 (N.D. Ill. Apr. 22, 2002). *See Select Creations, Inc. v. Paliafito Am. Inc.*, 830 F. Supp. 1223, 1238 (E.D. Wis. 1993) ("[I]t is relatively certain that apparent authority is insufficient for the service or acceptance of process."); *see also Annuity Plan of the Intern. Union of Operating Engineers Local No. 649 v. DEM/EX Group, Inc.*, 2008 WL 4491951, at *2 (C.D. Ill. Oct. 2, 2008) ("The doctrine of apparent authority, however, has no applicability to the issue of service of process."); *but see Trotter v. Tredick*, 2013 WL 6633001, at *4 (D. Mont. Dec. 17, 2013) (considering whether office manager had apparent authority to accept service for company).

The Tenth Circuit has not determined whether apparent authority applies in the service of process context. Regardless, plaintiffs have not demonstrated Rodriguez

4

had apparent authority to accept service on behalf of defendant. Rodriguez's Facebook page cannot establish apparent authority, which "must be established by an act of the principal." *Pytlik v. Professional Res. Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). And plaintiffs have not established why defendant's website, listing Rodriguez as the general manager, without more, is sufficient to demonstrate apparent authority. A general manager is not one of the individuals enumerated in Rule 4(h) who may accept service, and listing Rodriguez as such does not cloak him in apparent authority to accept service on behalf of defendant.

Plaintiffs have provided no evidence to demonstrate Rodriguez is a proper recipient of process under Fed. R. Civ P. 4. *Inversora Murten, S.A. v. Energoprojekt Holding Co.*, 2009 WL 179463, at *3 (D. Colo. Jan. 22, 2009) ("The Plaintiff's failure to show that this person was one of those permitted to receive process under Fed. R. Civ. P. 4(h)(1)(B) prevents the Plaintiff from carrying its burden of proving that its service was proper."). Therefore, the Court is unable to tell from the record whether defendant was properly served and whether it has personal jurisdiction over defendant. *See Jacobs v. Ocwen Loan Servicing, LLC*, No. 13-cv-02518-REB-BNB, 2013 WL 9541980, at *2 (D. Colo. Dec. 2, 2013). Good cause exists to set aside the entry of default.

Although proper service of process is lacking, defendant did not request dismissal of plaintiffs' claim for insufficient service of process under Rule 12(b)(5). "When a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant." *Pell v. Azar Nut Co., Inc.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983) (citing 5 C. Wright & Miller, Federal

Practice and Procedure § 1354, 586-87 (1969)).  The Court "has broad discretion to quash defective service and retain the case, especially where the Court may reasonably conclude that the plaintiff will ultimately be able to serve the defendant properly."  *Bey v. Clark*, No. 17-cv-01594-WJM-MEH, 2018 WL 994048, at *7 (D. Colo. Feb. 21, 2018).  "Dismissal in such a case 'would be without prejudice and would probably lead to the reinstitution of the suit[,] thereby needlessly burdening [the plaintiff] with additional expense and delay while postponing the adjudication of the controversy's merits."  *Id.* (quoting *Montgomery, Zukerman, Davis, Inc. v. Diepenbrock*, 698 F. Supp. 1453, 1459 (S.D. Ind. 1988) (alterations in original)).

The Court finds service here was insufficient but curable.  Although Rodriguez, as defendant's general manager, was not authorized to accept service for defendant, the attempt of service on him nevertheless gave defendant notice of the lawsuit.  Further, defendant has not alleged any prejudice resulting from ineffective service.  *See Li Cheng v. Sushi Aji, Inc.*, No. 17-cv-01732-MEH, 2017 WL 4772817, at *3 (D. Colo. Oct. 23, 2017) (defendant's actual notice of suit and lack of prejudice resulting from insufficient service warranted quashing service and allowing plaintiff opportunity to re-serve); *Culwell v. Walgreens Co.*, No. 14-cv-01771-RM-CBS, 2015 WL 1887255, at *2 (D. Colo. Apr. 24, 2015) (attempted service on store manager insufficient but curable); *see also Shields v. Duncan*, No. 14-cv-02231-RM-MEH, 2015 WL 2453038, at *2 (D. Colo. May 21, 2015) (attempted service on individual who represented he was authorized to accept service for defendant corporation, but where nothing in the record indicated individual was a proper person for receipt of service, was insufficient but

6

curable). The Court is confident plaintiffs can, if given additional time, effectuate proper service. For these reasons, the Court finds it appropriate to allow plaintiffs one more opportunity to effectuate proper service of process so that the litigation may proceed.

Defendant also argues, however, that the Court lacks subject matter jurisdiction over plaintiffs' claim because plaintiffs' lack standing under the EFTA. Docket No. 15 at 9. For this reason, the Court elects to address defendant's motion to dismiss for lack of subject matter jurisdiction to determine whether the litigation should go forward and whether it will be futile to afford plaintiffs another opportunity to effect service. *See Hall v. State Farm Ins.*, 2018 WL 2102310, at *1 (D. Kan. May 7, 2018) (generally, "the court allows plaintiffs another opportunity to properly effect service unless doing so would be futile.").

### III. MOTION TO DISMISS

Rule 12(b)(1) provides that a court may dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter." *Denison v. Correctional Health Partners*, No. 13-cv-01584-PAB-MEH, 2014 WL 1673126, at *5 (D. Colo. Apr. 28, 2014). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1289 (D. Colo. 2009).

Typically, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*Id.* (quotations and citations omitted). The present motion makes a facial attack on the Court's subject matter jurisdiction. Docket No. 15 at 10 ("These allegations, taken as true, are insufficient for standing. . ."). Therefore, the Court will accept the truthfulness of the complaint's factual allegations.

Defendant argues that the Court should dismiss plaintiffs' complaint entirely for lack of subject matter jurisdiction on the basis that plaintiffs lack standing to bring this lawsuit. Docket No. 15 at 12; *see Colo. Envtl. Coalition v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004) (standing is jurisdictional). Defendant argues plaintiffs have failed to plead any concrete injury beyond the statutory damages provided by § 1693k and, under *Spokeo, Inc., v. Robins*, 136 S. Ct. 1540 (2016), that this is insufficient to confer standing to sue. Docket No. 15 at 11; *see Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing."). Plaintiffs respond that, in passing the EFTA, Congress created a legal right to be free from having to use automatic payment arrangements and plaintiffs suffered a concrete injury through defendant's deprivation of that right. Docket No. 16 at 12. Plaintiffs also contend that they have "been exposed to a greater risk of incurring NSF fees as a result

8

of their [EFT] arrangements." *Id.* According to plaintiffs, "[t]hese are exactly the sort of injuries Congress sought to avoid by enacting the EFTA, thus they are concrete and actual" and, because they have been suffered by plaintiffs, they are particularized. *Id.*

"The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). To establish Article III standing, plaintiff must meet three elements:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).

"Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo,* 136 S. Ct. at 1547-48 (citations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (citing *Lujan*, 504 U.S. at 560). An injury is particularized if it affects "the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist;" it must be "real," not "abstract." *Id*.

In *Spokeo*, the Supreme Court clarified that "a bare procedural violation [of a

9

statute], divorced from any concrete harm" does not satisfy the injury-in-fact requirement of Article III. *Id.* at 1549. "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* The Supreme Court noted, however, that "the risk of real harm" may, in some circumstances, "satisfy the requirement of concreteness." *Id.* The Supreme Court cited two cases in which an allegation of an intangible harm was sufficient to confer standing. *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20-21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute."); *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989) ("Our decisions interpreting the Freedom of Information Act have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records."). Accordingly, in the narrow circumstance of an informational injury, a risk of real harm may be sufficiently concrete to satisfy Article III requirements. *Spokeo*, 136 S. Ct. at 1549-50. The Supreme Court remanded the case for a determination of whether the particular procedural violations alleged in the case "entail[ed] a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1550.

Plaintiffs rely on two post-*Spokeo* cases to support their argument that they have sufficiently alleged a concrete injury – *De la Torre v. CashCall, Inc.*, 2016 WL 6892693 (N.D. Cal. Nov. 23, 2016), and *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234

(4th Cir. 2019).[1]  In *De la Torre*, the defendant challenged the plaintiffs' standing to bring an EFTA action after *Spokeo*.  2016 WL 6892693 at *2.  The court determined that "Congress . . . enacted the EFTA 'to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems' with the 'primary objective of . . . the provision of individual consumer rights,'" including the requirement "that consumers are not forced to use EFT."  *Id.* at *8 (quoting 15 U.S.C. § 1963(b)).  Thus, the court found that the EFTA "guaranteed [the plaintiff] the right to choose her method of repayment when she sought credit from [the defendant]" and defendant "violated that right and caused [plaintiff] to confront the very harms Congress sought to avoid: the lack of choice in using EFT payments and the risks associated with those methods of payments."  *Id.*

In *Curtis*, the Fourth Circuit affirmed the district court's ruling that the plaintiff had standing to bring claims under the EFTA because he had alleged "a substantive violation of the rights conferred by EFTA" – "the right of a consumer to enter into a credit agreement without being required to agree to preauthorized EFTs."  915 F.3d at 241-42.  By alleging the defendant had violated that consumer right, the plaintiff had alleged "the type of harm Congress sought to prevent when it enacted' EFTA," which was sufficient to demonstrate standing.  *Id.* at 241 (quoting *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 346 (4th Cir. 2017)).

---

[1] At the time the parties filed their briefing, *Curtis* was pending before the Fourth Circuit.  Plaintiffs' Response to Defendant's Motion to Set Aside Clerk's Entry of Default and to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 16] relies on the district court decision, 265 F. Supp. 3d 647 (E.D. Va. 2017), which the Fourth Circuit affirmed.

The Court declines to follow *De la Torre* and *Curtis*, which are not binding authority. The right articulated by the *Curtis* court – "the right of a consumer to enter into a credit agreement without being required to agree to preauthorized EFTs," *id.*, – is a "procedural right" within the meaning of *Spokeo*. 136 S. Ct. at 1549-50. A plaintiff cannot, however, "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."[2] *Id.* at 1249. There must be some concrete harm alleged beyond the mere procedural violation of a statute. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

The Court is persuaded by the analysis in *Aikens v. Portfolio Recovery Associates LLC*, 716 F. App'x 37 (2d Cir. 2017) (unpublished). In *Aikens*, the plaintiff brought an EFTA case against the defendant for making EFT withdrawals from her bank account with her oral, but without her written, consent. *Id.* at 39. The Second Circuit first determined that the plaintiff could not establish that she had suffered actual harm as a result of the defendant's actions, as she had authorized the defendant to make those withdrawals from her account. *Id.* at 40. Moreover, the court found that the plaintiff failed to demonstrate a risk of real harm. *Id.* Although the plaintiff had alleged that the EFTA is intended to protect consumers against the inherent risks of "fraud,

---

[2]Under plaintiffs' analysis, the Court in *Spokeo* would have reached the opposite result. Through the Fair Credit Reporting Act, Congress intended "to curb the dissemination of false information" contained in consumer credit reports. *Id.* at 1550. But even though the plaintiff's lawsuit sought to remedy the type of harm Congress sought to prevent, the Supreme Court determined that the plaintiff's bare procedural violation was insufficient to confer standing, as there was no guarantee that a violation of one of the FCRA's procedural requirements would result in any harm. *Id.* The Court held that some additional harm must be alleged, beyond the mere violation of the statute, to establish standing. *Id.*

embezzlement, and unauthorized use," she "failed to allege in her complaint that she herself was exposed to any such risks," *id.* at 41, and failed to "articulate[] [any] theory at all to justify her hypothesis that [the defendant] created an increased risk of fraud." *Id.* Thus, the Second Circuit determined that plaintiff did not establish standing to pursue her EFTA claim. *Id. See also Hagy v. Demers & Adams*, 882 F.3d 616, 621-22 (6th Cir. 2018) (finding that the plaintiffs lacked standing to bring claim under Fair Debt Collection Practices Act based on defendant's failure to identify in a letter that it was a communication from a debt collector because the plaintiffs "ha[d] not shown . . . that this failure to disclose caused them any actual harm beyond that 'bare procedural violation,'" such as alleging that "the non-disclosure created a risk of double payment, caused anxiety, or led to any other concrete harm.").

In their complaint, plaintiffs allege that, "[d]uring the parties' discussions regarding the purchase of the vehicle," defendant's representative advised them that they "would have to enroll in an automatic payment plan" for their loans to be approved. Docket No. 1 at 4, ¶ 19; at 5, ¶ 30. They further allege that defendant "violated 15 U.S.C. § 1693k and 12 C.F.R. § 1005.10(e) by conditioning the extension of credit to Plaintiffs and the class members upon their repayment by preauthorized electronic fund transfers." *Id.* at 10, ¶ 61.

However, plaintiffs have not alleged an injury suffered as a result of defendant's conduct beyond defendant's alleged violation of the EFTA. *See* Docket No. 1. In their response to defendant's motion to dismiss, plaintiffs claim that "[d]efendant violated both Plaintiffs' right to be free from electronic fund transfer arrangements, and both Plaintiffs have been exposed to a greater risk of incurring NSF fees as a result of their

13

electronic fund transfer arrangements." Docket No. 16 at 12.  Not only is such an allegation absent from plaintiffs' complaint, but it fails to articulate some concrete harm to plaintiffs or any indication that the alleged injury "affect[s] the plaintiff[s] in a personal and individual way."  *Spokeo*, 136 S. Ct. at 1548.

In fact, a violation of the EFTA's procedural requirements as alleged by plaintiffs could result in no harm at all.  In *Spokeo*, the Supreme Court stated that the demands of Article III could not be satisfied by alleging a "bare procedural violation," particularly where that procedural violation "may result in no harm."  *Spokeo*, 136 S. Ct. at 1550. "The Supreme Court's point in *Spokeo* was not that a statutory violation cannot constitute a concrete injury, but rather that where the bare violation of a statute conferring a procedural right could cause a congressionally identified harm or material risk of harm and just as easily could not, it is not sufficient simply to allege that the statute at issue was violated."  *Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850, 857 (N.D. Ill. 2016).  For example, an individual may apply for a line of credit that is conditioned on his or her consent to EFT payments, but that individual may prefer the ease of using automatic payments, may never miss a payment, may never be charged an NSF fee, or may pay off her debt without issue.  In that case, despite the creditor's procedural violation of EFTA, the debtor would have suffered no concrete injury and, as a result, would have no standing to challenge the creditor's technical EFTA violation. Because a violation of the EFTA could readily result in no harm, the mere allegation that defendant violated the EFTA does not "entail a degree of risk sufficient to meet the concreteness requirement."  *Spokeo*, 136 S. Ct. at 1550.  *See Gesten v. Burger King*

*Corp.*, 2017 WL 4326101, at *5 (S.D. Fla. Sept. 27, 2017) (dismissing Fair and Accurate Credit Transaction Act case for lack of Article III standing where case "present[ed] a perfect example of a procedural violation that may result in no harm"). Thus, the Court finds that plaintiffs lack standing to bring this lawsuit and will dismiss their claim.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Clerk's Entry of Default against defendant Rocky Mountain Auto Brokers, Inc. [Docket No. 7] is **VACATED**. It is further

**ORDERED** that Defendant's Motion to Set Aside Entry of Default and to Dismiss for Lack of Subject Matter Jurisdiction [Docket No. 15] is **GRANTED**. It is further

**ORDERED** that, within 14 days of the entry of this Order, defendant may have its costs by filing a Bill of Costs with the Clerk of Court. It is further

**ORDERED** that this case is closed.

DATED September 25, 2019.

                                      BY THE COURT:

                                      s/Philip A. Brimmer
                                      PHILIP A. BRIMMER
                                      Chief United States District Judge